UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD TOWNS,
      PETITIONER,

                                    CASE NO.
                                    ES 01-CV-73945-DT
V.                                      HONORABLE
                                    BERNARD F. FRIEDMAN
JOHN CASON,                        HONORABLE
      RESPONDENT.                THOMAS A. CARLSON

_____/

TRAVERSE TO RESPONDENT'S ANSWER

PROOF OF SERVICE

GERALD TOWNS #206727
IN PRO PER

## ARGUMENT

I. THE RESPONDENT'S CONTENTION THAT PETITIONER'S "CRITICAL STAGE" CLAIM IS NOT REVIEWABLE BECAUSE OF A PROCEDURAL DEFAULT IS UNREASONABLE AND WITHOUT MERIT.

When Petitioner Towns raised his claim in the state court challenging the ex parte communication and right to a fair and impartial jury during deliberations, he reasonably apprised the state court's of the constitutional nature of his claim. (see MCOA brief, #228441, supra at 22-25.) Petitioner put the court on notice that counsel was not present when the ex parte communication occurred.

When adversarial proceedings are initiated against a defendant, it has always been viewed as a "critical stage" of the proceedings. The Court can infer from the argument that a claim is the deprivation of a substantial right guaranteed by the U.S. Constitution. Picard v Connor, 404 U.S. 270, 275-77 (1971); accord Duncan v Henry, 513 U.S. 364, 365-66 (1995)(per curiam).

If a petitioner cites to specific provisions of the U.S. Constitution in his state court brief, he has fairly presented his claim to the state court, so that claim is not procedurally barred for purposes of federal habeas corpus review. Davis v Strack, 270 F.3d 111 (2d Cir. 2001).

Petitioners may "fairly present" their federal claims in state court by, inter alia, presenting explicit constitutional arguments, relying on federal and state cases that employ a constitutional analysis, asserting the claim in terms that call

1

to mind a specific right protected by the Constitution, or alleging facts that fall well within the mainstream of constitutional litigation". <u>Levine</u> v <u>Comm'r</u> <u>of</u> <u>Corr.</u> <u>Servs.</u>, 44 F.3d 121, 124 (2d Cir. 1995)(citations and internal quotations marks omitted); accord <u>Daye</u> v <u>Attorney</u> <u>General</u>, 696 F.2d 186, 192-93 (2d Cir. 1982)(" the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature") cert. denied 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984).

Petitioner has no way of `knowing what affect the Court's response had on the juror's impartiality, and what affect that juror's impartiality may have had on the other jurors. The Trial Court impeded his efforts to comply with the state's procedural rule when it failed to notify defense counsel or petitioner of the ex parte communication. **Jury deliberations and return of a jury verdict constitutes critical stages of criminal proceedings for purposes of the Sixth Amendment.** <u>Siverson</u> v <u>O'Leary</u>, 764 F.2d 1208, 1214 (7th Cir. 1985); accord <u>United States</u> v <u>Smith</u>, 411 F.2d 733, 736 (6th Cir. 1969).

Petitioner first became aware of the ex parte communication during his appeal of right. The error complained of may have severely affected the juror's ability to fairly deliberate, was not harmless, and "had a substantial and injurious effect or influence in determining the jury's verdict". <u>Brecth</u> v <u>Abrahamson</u>, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

Further, Petitioner suffered prejudice because his Sixth Amendment right to counsel and Due Process rights under the

2

Fourteenth Amendment were violated. These rights exists where there is a reasonably substantial relation to the fullness of opportunity to defend against the charge and to the extent that a fair and just hearing would be thwarted by defendant's absence. U.S. v Gagnon, 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985), citing Snyder v Massachusetts, 291 U.S. 97, 105-06, 54 S.Ct. 330, 78 L.Ed. 674 (1934).

Accordingly, the state's assertion that Petitioner Towns procedurally defaulted his "critical stage" claim must fail and is entitled to full review.

## ARGUMENT

II. RESPONDENT'S CLAIM MUST FAIL BECAUSE IT IS PREMATURE AND AN EVIDENTIARY HEARING MAY BE REQUIRED TO FULLY ADJUDICATE THE CLAIM.

Petitioner contends that the State's response to argument II must fall because under precedent from the United States Supreme Court, an evidentiary hearing is required to ascertain whether the ex parte communication between the bailiff... and the deliberating jury was pregnant with the possibilities of error. United States v United States Gypsum Co., 438 U.S. 422, 460, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978).

In Remmer v United States, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed 654 (1954), the Court held: the trial court should not decide and take final action ex parte on information such as was received in the case, but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate.

No one can say beyond an absolute degree of certainty that the bailiff's ex parte communication with the jury did not exceed the lawful bounds of authority because the trial court failed to conduct an evidentiary hearing to inquire into the matter. See also, argument I and II, supra, of Memorandum of Law in support of initial writ of habeas corpus.

Conversely, argument II advanced by the Asst. Atty. General is premature because it fails to recognize long-standing precedent for assessment such as the one articulated in

4

Petitioner's Memorandum of Law in support.

The state argues that Petitioner has not shown how the juror's alleged concern affected the deliberations. However, this was due to the Trial Court's failure to informed Defense Counsel or Petitioner that an ex parte communication had occurred. This information became available to Mr. Towns during his appeal of right.

Further, under the harmless error doctrine, "the test is whether it appears beyond a reasonable doubt, the error complained of did not contribute to the verdict obtained." Nevers v Killinger, 990 F.Supp 844 (E.D. Mich. 1997 at 870).

Petitioner urges this Court that the error complained of did contribute to the verdict, creating grave doubt as to whether Mr. Towns should have been convicted. O'Neal v McAninch, 513 U.S. 432, 438; 115 S.Ct. 992, 995; 113 L.Ed.2d 947 (1995). citations omitted.

A court must satisfactorily probe non-frivolous charges of jury spoilage. See Smith v Phillips, 455 U.S. at 218, 102 S.Ct. at 946; Remmer v U.S., 347 U.S. at 230; Dennis v U.S., 339 U.S. 162, 171-72; 70 S.Ct. 519, 523; 94 L.Ed. 734 (1950).

For the reasons stated herein, this Court should grant the writ and order Petitioner released from custody.

## ARGUMENT

III. RESPONDENT'S ARGUMENT III MUST FAIL BECAUSE THE CASE RELIED UPON IS FACTUALLY DISTINGUISHABLE FROM THE CASE AT BAR.

Respondent's argument that Petitioner was not denied due process by the trial court's refusal to direct a verdict on the first degree murder charge is premised upon the holding in Daniel v Burke, 83 F.3d 760, 765 (6th Cir. 1996).

Daniel, supra, is factually distinguishable from the facts in the case at bar. The Sixth Circuit found from the testimony presented at trial, the following facts to sustain its finding that Daniel was not entitled to a directed verdict; 1) Petitioner Daniel pursued decedent with a gun; 2) tracked him down and shot him; 3) followed him; 4) engaged in mortal combat; 5) stabbed him several times and declared his intent to kill the victim.

From these factors, the Court found that a rationale trier of fact could have found Daniel guilty of first degree murder beyond a reasonable doubt.

In contrast with the case at bar, the only testimony linking Petitioner Towns to the crime came from Adaline Ramsey. In reviewing this testimony, this Court will find the following facts; 1) she identified Petitioner as the man in the truck and as the shooter, (TT, 4/25/96, pp53-56); 2) she testified Towns had a dark color, black or brown Bronco or Jeep, (TT, 4/25/96, p46); 3) Decedent called her to help celebrate his

6

birthday, and told her he stole money from Petitioner, (TT, 4/25/96, p47); 4) they bought cocaine, heroin and liquor went to a motel, used the drugs, stayed until the next morning. (TT, 4/25/96, pp48-51).

Ramsey admitted partying with decedent until 4:00a.m., five hours before the shooting; 5) they had smoked crack, snorted heroin and drank liquor, (TT, 4/25/96, pp67-69); 6) as they were driving home, a truck drove up and shots "started going". Petitioner was allegedly firing the shots. Ramsey heard several shots, and decedent said, "Adaline, I've been shot". (TT, 4/25/96, pp53-56).

Ramsey grabbed the wheel, they hit another car, decedent fell into her lap; 7) Police arrived and she told then she didn't see nothing, Ramsey was taken to Police Headquarters where she told police she didn't see nothing because she wanted to go home. (TT, 4/25/96, pp57-60); 8) Ramsey was taken to police headquarters on November 5, 1995, for more questioning. She claims she didn't say anything because she was scared. (TT, 4/25/96, pp63-65).

On November 7, 1995, police took Ramsey to homicide for a third interview and; 9) In a third statement, she claimed to have told police what "really happened". She said decedent robbed Petitioner and he was the one who pulled up and started shooting. (TT, 4/25/96, 67-69).

Finally on cross-examination; 10) Ramsey admitted she used the drugs with decedent in the early hours before the shooting. (TT, 4/25/96, p84); 11) she told police they were going eastbound

7

on Leander when she "heard" glass breaking, saw a broken window and believed decedent was shot. It was at this point, she started to lie because she wanted to go home. (TT, 4/29/96, pp5-9, 35-36); 12) **Ramsey said everything in her first two police statements was a lie. She didn't remember if it was a lie when she said she was half asleep when the shooting occurred.** (TT, 4/29/96, pp12-14); 13) She was up most of the night doing drugs and didn't get a lot of sleep. (TT, 4/29/96, pp14-16).

**Ramsey told family members and friends that she did not know who did the shooting.** (TT, 4/29/96, pp23-24, 28-29). On November 7, 1995, she identified Petitioner as the shooter for the first time. This was during her third visit to homicide. (TT, 4/29/96, pp29, 45).

Given the fact that Ramsey was under the influence of several drugs combined with the use of alcohol, her mental capacity was severely impaired. As such, it is questionable whether anything this witness said is believable.

Ramsey's testimony alone will not support the essential elements of premeditation for first degree murder, and there was no justification for submission to the jury of the charge of first degree murder. <u>Jackson</u> v <u>Virginia</u>, supra.

With no other direct testimony linking Petitioner to the crime, no rationale trier of fact would have found him guilty of first degree premeditated murder, and the judge was obliged to direct a verdict of acquittal, especially considering the evidence in a light most favorable to the prosecution.

Conversely, from review of the testimony, infra, it is

8

safe to assume that the only reason Petitioner was found guilty of second degree murder is because of the inference from the testimony implying that he was a drug dealer, decedent stolen money from him, and he was on a quest for vengeance.

The jury presumed that Petitioner was a bad man and resolved to find him guilty of the lesser of two evils, i.e. second degree murder as oppose to first degree murder.

As a matter of law, coupled with the fact that the evidence against Petitioner did not establish guilt overwhelmingly, the Court should presume, notwithstanding the evidence, the jury reached a "compromised verdict". Price v Georgia, 398 U.S. 323, 331; 90 S.Ct. 1757, 1762; 26 L.Ed.2d 300 (1970) "discussing the dangers of compromise verdict".

This Court should be left with a firm belief that Petitioner's conviction leaves the court in grave doubt as to whether an innocent man has been wrongfully convicted when viewing evidence in a light most favorable to the prosecution. O'Neal v McAninch, supra.

For the reasons stated herein, this Court should grant the petition and order that the Petitioner be released immediately.

## ARGUMENT

### IV.  ARGUMENT IV ADVANCED BY RESPONDENT IS WHOLLY WITHOUT MERIT.

Respondent urges this Court to abandon longstanding precedent where the U.S. Supreme Court has unequivocally held that guilt for a criminal offense must be established with proof beyond a reasonable doubt. In re Winship, supra.

The insufficiency of evidence claim raised by Petitioner is intricately connected with argument III's directed verdict issue, infra. It clearly shows that Respondent's proofs misses the mark when viewed in a light most favorable to the prosecution.

Falsehoods told by a prosecution witness which is repleted with contradictions and inconsistencies arouse suspicions and should be insufficient proofs upon which to convict, taken together with other evidence of guilt being weak.

The lack of evidence of guilt before the Court is as hospitable to an interpretation consistent with the Petitioner's innocence, as it is to the government's theory of guilt. U.S. v Johnson, 513 F.2d 819 (CA 2, 1975); accord Jackson v Virginia, supra.

The Respondent would urge this Court to apply an unreasonable application of the law to deny Petitioner relief. Williams v Taylor, 529 U.S. 362 (2000).

Had there been other evidence to establish Petitioner's guilt, notwithstanding that of witness Ramsey, then Respondent's argument perhaps might be solidly foundated. Since it is not,

10

habeas corpus relief is the appropriate remedy and should be granted.

## ARGUMENT

V.  PETITIONER CONCURS IN PART AND DISAGREES
    IN PART WITH THE STATE'S RESPONSE TO ARGUMENT
    V.

Petitioner Towns contends that it is well-established that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for habeas relief. Pulley v Harris, 465 U.S. 37, 41 (1984).

However, where the admission of the disputed evidence rendered the trial "so fundamentally unfair as to constitute a denial of federal rights" it may provide grounds for granting a writ of habeas corpus. Clemmons v Sowders, 34 F.3d 352, 356 (6th Cir. 1994). Petitioner Towns asserts that his constitutional rights were violated because the trial court admitted testimony from the decedent's brother, who alleged to have seen Towns with a gun, three months before the shooting of his brother.

Petitioner contends that admission of the prior acts violated his due process rights, because the testimony indicated that he had been involved in another criminal matter, and that he was a bad person who regularly carried weapons.

The Court of Appeals determined that they would find the error harmless in light of the overwhelming evidence against Petitioner.

This Court should find that the admission of the testimony violated due process. Under Michigan law, references to a defendant's prior acts are, unless specifically ruled otherwise,

12

generally inadmissible. MRE 404(b). A fundamental rule of evidence is that a defendant's "bad character" cannot be used to argue that the defendant committed the crime for which he is being tried, or had a propensity to commit that crime. See, e.g., Fed.R.Evid. 404(a); Michelson v U.S., 335 U.S. 469, 476 (1948). When a defendant has not taken the stand, testimony concerning prior bad acts impermissibly places his character before the fact finder.

In this case, Petitioner did not testify at trial and the prior bad acts testimony clearly informed the jury that Petitioner was, at a minimum, a bad man who carried guns. Further, the testimony was not relevant or material given that the alleged incident occurred three months prior to the shooting. The Prosecution failed to establish what type of weapon was used in this case, no gun was recovered, and the trial court failed to weigh the probative value against the prejudicial effect.

More importantly, this Court should find the error was not harmless given the fact that the testimony came from a biased witness, the decedent's brother, who was a good friend of Ramsey's, the state's only eyewitness. The jury could easily infer that since Petitioner was a man who carried guns and sold drugs, he probably committed the crime.

This Court should conclude that Petitioner was denied due process and that the admission of the prior acts testimony rendered the trial fundamentally unfair and so prejudiced him as to constitute a violation of due process.

13

## ARGUMENT

VI.  PETITIONER CONCURS IN PART AND DISAGREES
IN PART WITH THE STATE'S RESPONSE TO ARGUMENT
VI AND REQUEST AND EVIDENTIARY HEARING ON
THIS ISSUE.

This Court cannot fairly adjudicate this claim for lack of a sufficient record. However, this Court should not review this claim lightly and should take the initiative to grant Petitioner Towns an evidentiary hearing pursuant to <u>Townsend</u> v <u>Sain</u>, 372 U.S. 293 (1963).

The issue before the Court begs to be answered and could only be established at an evidentiary hearing given the egregious deprivations of Petitioner's right to a fair trial. At minimum, this Court should afford Petitioner Towns an opportunity to establish a necessary record in order to fairly decide this issue.

In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. <u>Strickland</u>, Id. at 2065. Petitioner contends that counsel's performance was unreasonable. The only eyewitness, Adaline Ramsey, gave three signed police statements, the third one implicating Petitioner as the shooter. The statement implied that Ramsey identified Petitioner from a single photo shown by police.

Defense Counsel knew or should have known the importance of Ramsey's identification, yet he failed to challenge the identification procedure or cross-examine Ramsey about the manner

14

## ARGUMENT

VI. PETITIONER CONCURS IN PART AND DISAGREES
IN PART WITH THE STATE'S RESPONSE TO ARGUMENT
VI AND REQUEST AND EVIDENTIARY HEARING ON
THIS ISSUE.

This Court cannot fairly adjudicate this claim for lack
of a sufficient record. However, this Court should not review
this claim lightly and should take the initiative to grant
Petitioner Towns an evidentiary hearing pursuant to Townsend
v Sain, 372 U.S. 293 (1963).

The issue before the Court begs to be answered and could
only be established at an evidentiary hearing given the egregious
deprivations of Petitioner's right to a fair trial. At minimum,
this Court should afford Petitioner Towns an opportunity to
establish a necessary record in order to fairly decide this
issue.

In any case presenting an ineffectiveness claim, the
performance inquiry must be whether counsel's assistance was
reasonable considering all the circumstances. Strickland, Id.
at 2065. Petitioner contends that counsel's performance was
unreasonable. The only eyewitness, Adaline Ramsey, gave three
signed police statements, the third one implicating Petitioner
as the shooter. The statement implied that Ramsey identified
Petitioner from a single photo shown by police. Defense Counsel
knew or should have known the importance of Ramsey's
identification, yet he failed to challenge the identification
or cross-examine Ramsey about the manner in which is was
conducted. The entire case hinged on Ramsey's credibility as

15

in which it was conducted. The entire case hinged on Ramsey's credibility as a witness. Counsel's performance was unreasonable. Id. at 2066.

Petitioner did file a motion to remand, pursuant to People v Ginther, 390 Mich 436 (1973), citing several alleged errors made by trail counsel. Appellate Counsel attached an affidavit explaining the delay in filing and expressed that it was no fault of Petitioner's. The Michigan Court of Appeals denied the motion and counsel filed an appeal to the Michigan Supreme Court, which was also denied.

Petitioner asserts that Trial Counsel made some serious mistakes before and during trial, and but for the errors made by trial counsel, Petitioner had a chance of being acquitted, i.e. failing the challenge or object to a unsigned statement police wrote and adopted as Petitioner's. Defense Counsel told Petitioner that the statement probably wouldn't be used at trial, and ignored several requests for an evidentiary hearing.

The state courts erred in denying the evidentiary hearing considering the seriousness of trial counsel's deficient performance. The only way Petitioner can show that trial counsel's performance was deficient, that he suffered prejudiced as a result, and that, but for counsel's errors, the result would have been different, is if this Court grants an evidentiary hearing to establish a record.

Defense Counsel failed to present a defense, despite having filed a notice of alibi, and having the witnesses present in the court room. They were supoenaed by trial counsel, yet he

16

did not call them to testify.

Defense Counsel instead relied on the weakness of the prosecution's case, and cannot justify his reasons for doing so.

Accordingly, Petitioner prays this Court will grant an evidentiary hearing in the interest of justice.

## ARGUMENT

### VII. THE STATE'S RESPONSE TO ARGUMENT VII IS WHOLLY WITHOUT MERIT.

Apparently, Respondent misunderstands the procedural default rule contemplated by MCR 6.508(D). Given that the standard for this rule was adopted solely from the federal case law, the State of Michigan has failed to articulate a state standard for "cause" and "prejudice".

Therefore this Court must look to the standard enunciated in Murray v Carrier, supra. Since the decision in Murray, it is apparent that the Attorney General and State Prosecutor's office has misapprehended the holdings by the U.S. Supreme Court in Murray.

The court in Murray, supra, held that when a petitioner presents a claim of ineffective assistance of counsel that does not rise to the level of constitutional magnitude, then the petitioner must show that some type of external factor or impediment prevented him from presenting the claims during his appeal as of right. This proposition was reemphasize in Lucas v O'Dea, 179 F.3d 412 (CA 6, 1999).

The Sixth Circuit reiterated in Lucas, supra, that "ineffective assistance of counsel is not established by all errors, but rather by errors so serious that the defendant is not receiving the counsel guaranteed by the Sixth Amendment". See Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

Under the circumstances of this particular case, the determination as to whether the Petitioner can establish cause

18

is contingent upon this Court granting an evidentiary hearing as requested in Argument VI, supra. Because no evidentiary hearing has been conducted, Petitioner urges this Court to preserve adjudication of Argument VII until this Court determines whether an evidentiary hearing will be granted.

Petitioner believes if this Court grants an evidentiary hearing, he will be able to establish cause necessary to overcome procedural default. Furthermore, even when a petitioner fails to show cause and prejudice, a court must still consider whether special circumstances require that the showing be waived.

Specifically, a court may notice an otherwise defaulted claim if it concludes that petitioner has shown by clear and convincing evidence that but for the constitutional error no reasonable juror would have found him guilty of the crime. Sawyer v Whitley, 505 U.S. 333, 339-40, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

For the reasons stated herein, Respondent's argument must fall.

## CONCLUSION

FOR THE FOREGOING REASONS, PETITIONER REQUESTS THIS COURT ORDER ANY NECESSARY EVIDENTIARY HEARINGS AND/OR GRANT PETITIONER HABEAS RELIEF.

RESPECTFULLY SUBMITTED,

GERALD TOWNS #206727
PRO PER
MOUND CORR. FACILITY
17601 MOUND ROAD
DETROIT, MI. 48212

DATED: MAY _14_, 2002

20

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD TOWNS,
      PETITIONER,

                                    CASE NO.
                                    ES 01-CV-73945-DT
V.                                HONORABLE
                                    BERNARD F. FRIEDMAN

JOHN CASON,
      RESPONDENT.

_____/

PROOF OF SERVICE

      The undersigned certifies that on the date set forth below,
he served a copy of the following papers:

    1. Petitioner's Traverse to Respondent's Answer; and

    2. Proof of Service

upon:

                       Eastern District Court Clerk
                     United States District Court
                          231 Lafayette Blvd.
                          Detroit, MI. 48226

                             and

                State of Michigan Attorney General
                            P.O. Box 30217
                          Lansing, MI. 48909

      I declare under penalty of perjury that the foregoing is
true and correct.

                                              GERALD TOWNS

Dated: May 14, 2002