# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**GERALD TOWNS,**

           **Petitioner,**

                                **CIVIL CASE NO. 01-CV-73945-DT**

**v.**                              **HONORABLE BERNARD A. FRIEDMAN**

**JOHN CASON,**

           **Respondent.**

_____/

## OPINION AND ORDER DENYING PETITION
## FOR A WRIT OF HABEAS CORPUS

Petitioner Gerald Towns, a state prisoner presently confined at the Mound Correctional Facility in Detroit, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of second-degree murder and felony firearm following a jury trial in the Wayne County Circuit Court in 1996. He was sentenced to 20 to 30 years imprisonment on the murder conviction and a consecutive term of two years imprisonment on the firearm conviction.

In his pleadings, Petitioner asserts claims concerning the right to counsel, jury bias, the submission of a first-degree murder charge, the sufficiency of evidence, the admission of other acts evidence, the effectiveness of trial counsel, prosecutorial misconduct, the voluntariness of a pre-trial statement, and the propriety of the pre-trial identification procedure. For the reasons stated below, the petition for a writ of habeas corpus is denied.

## I.    Facts

Petitioner's convictions arise from the shooting death of Olonzo Freeman in his car on the morning of November 3, 1995.  Petitioner was charged with first-degree premeditated murder and possession of a firearm during the commission of a felony.  The Michigan Court of Appeals summarized the relevant trial testimony as follows:

> The evidence at trial showed defendant fired several shots at the victim's car, two of which struck and fatally wounded the victim.  The passenger in the victim's vehicle at the time of the shooting was Adaline Ramsey, a woman who grew up with defendant and the victim.  Ramsey identified defendant as the shooter.  She also testified that the victim told her he had stolen money from defendant.  Other witnesses testified defendant told them the victim had stolen money from him.  Defendant told police he had gone out looking for the victim to get the money back when he discovered the money was missing.  Defendant said he was "going to kick [the victim's] a* * " for stealing the money, but he would not have killed the victim.  A friend of defendant testified that at the time of the shooting defendant was with him at his girlfriend's house.

*People v. Towns*, No. 197200, 1998 WL 1992785, *1 (Mich. Ct. App. May 5, 1998) (unpublished).

At the close of trial, the jury acquitted Petitioner of first-degree murder, but found him guilty of second-degree murder and felony firearm.  The trial court subsequently sentenced him to consecutive terms of 20 to 30 years imprisonment and two years imprisonment.

## II.    Procedural History

Following his convictions and sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals, asserting the following claims:

I.      The trial court erred in denying the defense motion for a directed verdict on the first-degree murder charge, denying him a fair and impartial jury.

II.     There was insufficient evidence to support his second-degree murder conviction.

III.    He was denied his right to a fair and impartial jury by the trial court's failure

2

to exercise its discretion and fully investigate a problem with one juror.

IV.   He was denied a fair trial by the trial court's ex parte communication with the jury through the bailiff.

V.   He was denied the effective assistance of trial counsel.

VI.   He was denied his right to a fair trial by the admission of irrelevant and highly prejudicial hearsay testimony.

VII   He was denied his right to present a defense by the prosecutor's interjection of evidence of his alibi defense during the prosecution's case in-chief.

VIII.   His sentence violates the principle of proportionality.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Towns*, No. 197200, 1998 WL 1992785 (Mich. Ct. App. May 5, 1998) (unpublished). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, raising the directed verdict claim, the sufficiency of the evidence claim, the ex parte communication claim, the hearsay evidence claim, the ineffective assistance of counsel claim, and a new claim challenging the pre-trial identification procedure. The Michigan Supreme Court denied leave to appeal in a standard order. *People v. Towns*, 459 Mich. 979, 593 N.W.2d 554 (1999).

Petitioner thereafter filed a motion for relief from judgment in the trial court on July 14, 1999, raising the following claims:

I.   He was denied due process when the prosecutor violated the discovery order and withheld favorable evidence.

II.   He was denied his state and federal constitutional rights where the police identification procedure was unduly suggestive and illegally held.

III.   He was denied his state and federal constitutional rights where the police obtained an illegal and unsigned statement.

IV.   He was denied his confrontation rights and a fair trial by the prosecutor's

3

improper opening argument.

V.    The trial court erred by admitting irrelevant other acts evidence.

VI.   He was denied the effective assistance of appellate counsel.

The trial court denied the motion in a written opinion. *People v. Towns*, No. 95-12841-01 (Wayne

Co. Cir. Ct. June 19, 2000) (unpublished).  Petitioner filed an application for leave to appeal with

the Michigan Court of Appeals, which was denied. *People v. Towns*, No. 228441 (Mich. Ct. App.

Feb. 15, 2001) (unpublished).  Petitioner also filed an application for leave to appeal with the

Michigan Supreme Court, which was denied for failure "to meet the burden of establishing

entitlement to relief under MCR 6.508(D)." *People v. Towns*, No. 118703, _ Mich. _, 632 N.W.2d

144 (2001).

Petitioner filed the present petition for a writ of habeas corpus on October 17, 2001, raising

the following claims:

I.     He was denied his right to counsel by the trial court's failure to exercise its
       discretion and fully investigate a problem with a juror during deliberations.

II.    He was denied his right to a fair and impartial jury by the trial court's failure
       to investigate the juror problem.

III.   He was denied due process when the trial court denied his motion for direct
       verdict of acquittal on the first-degree murder charge.

IV.    There was insufficient evidence to support his second-degree murder
       conviction.

V.     He was denied due process by the trial court's admission of irrelevant other
       acts evidence.

VI.    He was denied his right to the effective assistance of trial counsel.

VII.   He was denied due process when the prosecutor violated a discovery order
       and failed to produce favorable evidence.

4

VIII.   He was denied his constitutional rights when the police refused his request for counsel and used his unsigned and edited statement.

IX.   He was denied due process and the right to counsel when the police conducted an unduly suggestive identification procedure.

Respondent filed an answer to the petition on April 29, 2002, asserting that the claims should be denied for lack of merit and/or based upon procedural default.

## III.   Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed this habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court undertook a detailed analysis of the correct standard of review under the AEDPA.  According to the Court:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied – the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 412-13 (O'Connor, J., delivering the opinion of the Court on this issue).

In evaluating a state court decision under the "unreasonable application" clause, the Supreme Court further stated that a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 411. "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*

The Supreme Court also clarified that the phrase "clearly established Federal law, as determined by the Supreme Court of the United States," refers to "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 412. In determining what constitutes clearly established federal law, therefore, a federal habeas court must look to pertinent United States Supreme Court precedent.

Lastly, § 2254(e)(1) requires that this Court presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

6

**IV.**   <u>Analysis</u>

    **A.**   <u>Jury Deliberation Claims</u>

    Petitioner first claims that he is entitled to habeas relief because the trial court violated his right to a fair, impartial jury and his right to counsel by failing to properly investigate a problem with one of the jurors during deliberations.  The record reveals that the jury began deliberations at 3:03 p.m. on April 30, 1996 and were excused for the evening at 4:10 p.m.  The jury reported back to the court and continued deliberations at 9:10 a.m. on May 1, 1996.  At 4:02 p.m. that day, the jury foreperson sent the judge a note stating: "We have a juror unable to serve because she is supposed to go out of town on personal business."  The bailiff returned the following note to the jury: "Per Judge Crockett, your personal business is being here tomorrow at 9:00 a.m."  The record before this Court does not reflect whether the trial court notified the prosecution or the defense of this communication with the jury.[1]  The jury reconvened  the following morning, continued its deliberations, and rendered its verdict at 11:10 a.m.  The trial court polled the jury and each juror verified that he or she voted to convict Petitioner of second-degree murder and felony firearm.

    **1.**   <u>Impartial Jury</u>

    Petitioner claims that he was denied his right to a fair and impartial jury because the trial court failed to exercise its discretion and inquire into the juror's concerns.  Petitioner's theory is that the individual juror, or perhaps the entire jury, may have voted to convict him in order to accommodate the juror's travel plans.  It is well-settled that the Sixth Amendment right to a jury trial guarantees a criminal defendant a fair trial by a panel of impartial jurors. *Smith v. Phillips*, 455

---

[1]The trial transcript for the afternoon of May 1, 1996 is missing from this Court's file and has yet to be provided by the parties.

U.S. 209, 217 (1982) ("Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen."); *DeLisle v. Rivers*, 161 F.3d 370, 382 (6th Cir. 1998) (citing *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)).

Reviewing courts have recognized that the trial court is in the best position to determine the nature and extent of alleged jury misconduct, as well as the appropriate remedy for any demonstrated misconduct. *United States v. Gaitan-Acevedo*, 148 F.3d 577, 590 (6th Cir. 1998) (citing *United States v. Copeland*, 51 F.3d 611, 613 (6th Cir. 1995)); *United States v. Tines*, 70 F.3d 391, 398 (6th Cir. 1995). A state court's factual findings concerning jury impartiality are presumed correct and may only be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *DeLisle*, 161 F.3d at 382 ("we may only overturn a state court's findings of juror impartiality if those findings were manifestly erroneous").

In this case, the Michigan Court of Appeals found that the trial court was justified in instructing the juror to appear and continue deliberations and did not abuse its discretion by not inquiring further into the matter. The court also found that Petitioner failed to show any prejudice from the trial court's action. *Towns*, 1998 WL 1992785 at *2. The Court of Appeals did not specifically address whether the trial court's conduct constituted a denial of Petitioner's federal rights. Accordingly, this Court must conduct an independent review of the state court's decision. *See, e.g., Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 943. This

8

independent review "is not a full, de novo review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id.*

Having reviewed the record, this Court concludes that the Michigan Court of Appeals's decision is neither contrary to federal law nor an unreasonable application of that law. Petitioner has failed to show that any of the jury members were biased against him or rendered an improper judgment based upon the juror's travel plans or the trial court's communication with the jury. The record reflects that the jury deliberated for one hour on April 30, 1996, continued deliberations on May 1, 1996, and rendered its verdict on May 2, 1996 at approximately 11:00 a.m. During the course of those deliberations, the jury requested and received exhibits and supplemental instructions (after the trial court notified and consulted the parties). The jury acquitted Petitioner of first-degree murder and found him guilty of second-degree murder and felony firearm. There is no indication that the jurors rushed to judgment to accommodate the juror's travel plans. The trial court polled the jury and each of the jurors stated that the verdict reflected his or her vote. Moreover, the trial court's communication with the jury was innocuous. He merely instructed the jurors to return to court the following morning. He did not pressure them into returning a verdict or comment on a legal matter or a fact in controversy. Petitioner's assertion that the jury was improperly influenced by the juror's travel plans or the trial court's *ex parte* communication is pure speculation and does not warrant relief.

2.     Right to Counsel

Petitioner relatedly claims that he was denied his right to counsel because the trial court engaged in an *ex parte* communication with the jury concerning the juror's travel plans. A criminal

9

defendant has a fundamental right to have defense counsel present at every critical stage of a criminal trial. *See, e.g., United States v. Cronic*, 466 U.S. 648, 659 n. 25 (1984). However, an alleged violation of a defendant's constitutional rights with respect to a trial court's *ex parte* communication with a jury is subject to a harmless error analysis. *See Rushen v. Spain*, 464 U.S. 114, 117-20 (1983) (holding that a trial court's *ex parte* communication with a juror concerning her personal acquaintance with a police informant's murder victim and her fear that she might cry if her friend's murder was discussed was harmless error because the communication was innocuous); *accord Ellsworth v. Levenhagen*, 248 F.3d 624, 640-42 (7th Cir. 2001); *Crease v. McKune*, 189 F.3d 1188, 1193 (10th Cir. 1999); *Evans v. Kernan*, 139 F.3d 904, 1998 WL 78572, *1 (9th Cir. 1998) (unpublished); *Tate v. Morris*, 909 F.2d 1485, 1990 WL 117367, *3-5 (6th Cir. 1990) (unpublished); *United States v. Bishawi*, 186 F. Supp. 2d 889, 892-94 (S.D. Ill. 2002).

The Michigan Court of Appeals in this case considered the issue as a matter of state law and concluded that Petitioner has not established that he was prejudiced by the trial court's involvement in this "housekeeping" matter. Because the Michigan Court of Appeals did not consider this issue as a matter of federal law, this Court will again conduct an independent review of the state court's decision. *See Harris,* 212 F.3d at 943.

Having done so, this Court finds that the state court's determination is consistent with federal law and constitutes a reasonable application of that law. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Gilliam v. Mitchell*, 179 F.3d 990, 995 (6th Cir. 1999) (harmless error standard announced in *Brecht* applies even if a federal habeas court is the first to

10

review for harmless error); *see also O'Neal v. McAninch*, 513 U.S. 432, 445 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon the jury's verdict). As discussed *supra*, Petitioner has not established, nor does the record indicate, that he was prejudiced by the trial court's *ex parte* communication with the jury. Petitioner is thus not entitled to habeas relief on this claim.

B.      Directed Verdict Claim

Petitioner next claims that he is entitled to habeas relief because the trial court erred in denying his motion for a directed verdict of acquittal on the first-degree murder charge. Petitioner is not entitled to relief on this claim. First, to the extent that Petitioner relies upon state law to support this argument, he fails to state a claim for habeas relief. It is well-settled that habeas relief may not be granted for alleged violations of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Shacks v. Tessmer*, 2001 WL 523533, *6 (6th Cir. May 8, 2001) (unpublished) (finding no merit in petitioner's claim that the trial court erred in denying his motion for directed verdict of acquittal on first-degree murder charge based upon alleged state law violations).

Second, the submission of a criminal charge to a jury likely constitutes harmless error when the defendant is acquitted of that charge. *See Daniels v. Burke*, 83 F.3d 760, 765 n. 4 (6th Cir. 1996) (citing cases); *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001). Petitioner in this case was acquitted of first-degree murder and convicted of second-degree murder. As discussed *infra*, the prosecution presented sufficient evidence to support Petitioner's second-degree murder conviction.

C.      Insufficient Evidence Claim

Petitioner also claims that insufficient evidence was presented at trial to support his second-

11

degree murder conviction.   Specifically, Petitioner asserts that witness Adaline Ramsey's identification testimony was unreliable because she used alcohol and drugs prior to the incident and because she declined to identify the shooter when speaking to police on several occasions after the incident.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."   Under Michigan law, second-degree murder is the unjustified and unexcused killing of a human being with malice.   To prove malice, the prosecution must establish that the defendant has the intent to kill or do great bodily harm, or has created and disregarded a very high risk of death or great bodily harm. *See People v. Bailey*, 207 Mich. App. 8, 9 (1994).   Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of the crime. *See, e.g., People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993).

The Michigan Court of Appeals concluded that sufficient evidence was presented to support Petitioner's second-degree murder conviction. *See Towns*, 1998 WL 1992785 at *1-2.   Having carefully reviewed the trial court record, this Court concludes that the Michigan Court of Appeals' decision is consistent with federal law and constitutes a reasonable application of that law.   The testimony of Adaline Ramsey, in conjunction with Petitioner's own statement, was sufficient to establish Petitioner's guilt of second-degree murder.   Petitioner's insufficient evidence claim essentially challenges the credibility of Ms. Ramsey's testimony.   However, it is well-settled that "[a] federal habeas corpus court faced with a record of historical facts that supports conflicting

12

inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983). Given the evidence presented at trial, this Court finds that the Michigan Court of Appeals' determination that a rational trier of fact could have found the elements of second-degree murder beyond a reasonable doubt was reasonable. Petitioner is not entitled to relief on this claim.

### D.     Other Acts Evidence Claim

Petitioner next claims that he is entitled to habeas relief because the trial court erred in admitting evidence from the victim's brother that Petitioner possessed firearms on two occasions prior to the shooting in question. It is well-established, however, that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only where admission of the disputed evidence rendered the trial "so fundamentally unfair as to constitute a denial of federal rights" may it provide grounds for granting a writ of habeas corpus. *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).

In this case, the Michigan Court of Appeals found that even if the other acts testimony was improperly admitted, the error was harmless. *See Towns*, 1998 WL 1992785 at *3. Having reviewed the record, this Court agrees and finds that the Michigan Court of Appeals' decision is consistent with federal law and constitutes a reasonable application of that law. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict."

13

*Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Gilliam v. Mitchell*, 179 F.3d 990, 995 (6th Cir. 1999) (harmless error standard announced in *Brecht* applies even if a federal habeas court is the first to review for harmless error); *see also O'Neal v. McAninch*, 513 U.S. 432, 445 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon the jury's verdict).

The prosecution presented significant evidence of Petitioner's guilt of second-degree murder and felony firearm. Adaline Ramsey's testimony established that Petitioner was the shooter and Petitioner's own statement to police reflected his intent to harm the victim for stealing money from him. Given such evidence, Petitioner has not shown that the disputed testimony from the victim's brother had a substantial or injurious effect or influence upon the jury's verdict. He is thus not entitled to habeas relief on this claim.

E.    Ineffective Assistance of Trial Counsel Claims

Petitioner claims that he is entitled to habeas relief because trial counsel was ineffective. Specifically, Petitioner claims that counsel failed to seek suppression of his criminal record (so that he could testify at trial), failed to seek suppression of his police statement, failed to investigate the victim's other robberies, failed to produce a picture of his truck, failed to effectively cross-examine witnesses and produce additional witnesses, failed to advance his alibi defense, and failed to retain an investigator or expert witness, and failed to challenge a pre-trial identification procedure.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel

14

as guaranteed by the Sixth Amendment. 466 U.S. at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.  *Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.  The petitioner bears the burden of overcoming the presumption that the challenged actions might be considered sound trial strategy.  *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*  In *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993), the Supreme Court observed that "an analysis focusing solely on outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable is defective."  The United States Court of Appeals for the Sixth Circuit has thus concluded that a reviewing court should focus on whether counsel's alleged errors "have undermined the reliability of and confidence in the result."  *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996).  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  *Id.* at 1311-12 (quoting *Strickland*, 466 U.S. at 686).

In this case, the Michigan Court of Appeals applied the *Strickland* standard and concluded that Petitioner was not denied his constitutional right to the effective assistance of counsel. *See Towns*, 1998 WL 1992785 at *2-3. The court's decision is consistent with *Strickland* and constitutes a reasonable application thereof. Petitioner cannot establish that counsel's performance was deficient and/or that he was prejudiced by counsel's conduct.

> 1.   Suppression of Criminal Record

Petitioner claims that counsel was ineffective for failing to move to suppress his prior criminal record so that Petitioner could testify at trial. Under Michigan law, however, Petitioner's asserted prior conviction for receiving and concealing stolen property would have been admissible for impeachment purposes under Michigan Rule of Evidence 609. Petitioner has not shown that counsel was deficient for failing to seek suppression of his prior criminal record. Further, counsel may have reasonably determined that it was in Petitioner's best interest not to testify at trial for other strategic reasons. This Court will not second-guess counsel's trial strategy.

> 2.   Suppression of Police Statement

Petitioner also claims that counsel was ineffective for failing to seek suppression of his police statement. Trial counsel, however, may have reasonably determined that admission of the statement was to Petitioner's benefit. Although Petitioner admitted having a dispute with the victim over the victim's theft of his money, he also explained his whereabouts at the time of the shooting and denied killing the victim. Additionally, Petitioner has not shown that his statement should have been suppressed. The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions. *Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986). A confession is considered involuntary if: (1) the police extorted the confession by means of coercive

16

activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "because of the coercive police activity in question." *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988).

In determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton*, 474 U.S. 104, 112 (1985). Those circumstances include:

1. Police Coercion (a "crucial element")
2. Length of Interrogation
3. Location of Interrogation
4. Continuity of Interrogation
5. Suspect's Maturity
6. Suspect's Education
7. Suspect's Physical Condition & Mental Health
8. Whether Suspect Was Advised of Miranda Rights

*Withrow v. Williams*, 507 U.S. 680, 693-94 (1993). All of the factors involved in the giving of the statement should be closely scrutinized. *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). Without coercive police activity, however, a confession should not be deemed involuntary. *Connelly,* 479 U.S. at 167 ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause"). The burden of proving that a confession was obtained involuntarily rests with the petitioner. *Boles v. Foltz*, 816 F.2d 1132, 1136 (6th Cir. 1987). Voluntariness need only be established by a preponderance of the evidence. *Id.*

In this case, the investigating officer testified that Petitioner was advised of his *Miranda* rights and signed a constitutional rights form before making his statement. Petitioner could read

and write and was familiar with criminal procedures. Petitioner spoke to the officer voluntarily, but refused to sign the written statement when it was completed. There is no evidence to suggest that Petitioner's statement was coerced or made in violation of the right to counsel. Petitioner has not established that counsel's performance was deficient or prejudicial.

### 3. Investigation of Victim's Other Robberies

Petitioner also claims that counsel was ineffective for failing to investigate and produce witnesses who would testify that the victim robbed other individuals (to establish that others had a motive to kill the victim). The record reveals that counsel moved to admit evidence of other robberies under the catch-all exception to the hearsay rule through the testimony of Adaline Ramsey. The trial court, however, denied the motion. Petitioner claims that counsel should have brought forth witnesses to provide direct testimony of the victim's involvement in other robberies. Petitioner, however, does not offer the proposed testimony of such witnesses nor present any facts indicating that counsel did not attempt to further investigate this issue. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See, e.g., Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998) (conclusory allegations of ineffective assistance of appellate counsel do not warrant habeas relief); *Zettlemoyer v. Fulcomer,* 923 F.2d 284, 301 (3rd Cir. 1991) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings). Petitioner has also not shown that counsel could have obtained such statements with reasonable effort. To be sure, it is highly unlikely that witnesses would have come forward to voluntarily admit having a motive to kill the victim. Lastly, even if such testimony had been presented, it is unlikely that it would have affected the outcome at trial given Adaline Ramsey's eyewitness identification of Petitioner as the shooter in this case. Petitioner has not

18

established that counsel's performance was deficient or prejudicial.

### 4. Production of Truck

Petitioner next claims that counsel was ineffective for failing to produce photographs of his truck because there was conflicting testimony as to the color of the truck involved in the shooting. Counsel, however, may have reasonably determined that such a photograph could be harmful to the defense and that Petitioner's case was better served by relying upon the conflicting descriptions of the vehicle. Petitioner has not established that counsel's performance was deficient or prejudicial.

### 5. Cross-Examination and Production of Witnesses

Petitioner also claims that counsel was ineffective for failing to properly cross-examine witnesses and for failing to produce additional witnesses at trial. Such matters, however, fall within the purview of trial strategy. Matters of trial strategy are presumed correct and are generally not evaluated in hindsight or second-guessed upon habeas review. *See, e.g., McQueen*, 99 F.3d at 1311. In this case, defense counsel cross-examined the witnesses presented by the prosecution, particularly Adaline Ramsey. Counsel was apparently aware of additional witnesses, but chose not to call them. Counsel may have reasonably determined that additional testimony was unnecessary or would not have advanced Petitioner's defense. Counsel's strategy was to challenge Adaline Ramsey's credibility, assert Petitioner's alibi defense, and argue that reasonable doubt existed as to Petitioner's guilt of the charged offenses. Petitioner has not overcome the presumption that counsel's decisions were sound trial strategy. While counsel's strategy and defense was unsuccessful in having Petitioner acquitted of all charges, the Court cannot conclude that counsel's performance was deficient under the circumstances of this case.

Furthermore, Petitioner has not established that he was prejudiced by counsel's conduct. Given the evidence presented at trial, including Adaline Ramsey's testimony and Petitioner's statement, it cannot be said that the failure to call additional witnesses affected the outcome of the trial or undermined the reliability of the verdict.

6.      <u>Alibi Defense</u>

Petitioner relatedly claims that counsel was ineffective for failing to advance his alibi defense at trial. This claim is belied by the record. Edward Brown testified in a manner consistent with Petitioner's alibi defense and Petitioner's statement supported the defense. Moreover, trial counsel argued the alibi evidence in closing statements in addition to attacking the credibility of Adaline Ramsey.

7.      <u>Retention of Investigator or Expert Witness</u>

Petitioner next claims that counsel was ineffective for failing to utilize an investigator or expert witness at trial. This claim is without merit. The jurors were well aware of the defense criticism of Adaline Ramsey's identification of Petitioner as the shooter based upon her drug usage and her conflicting statements to police. An investigator or expert witness would not have had specialized knowledge in such matters and was unwarranted at trial.

8.      <u>Pre-Trial Identification</u>

Lastly, Petitioner claims that counsel was ineffective for failing to challenge a pre-trial identification procedure in which Adaline Ramsey was only shown Petitioner's photograph. Petitioner, however, has not established that trial counsel was deficient or that he was prejudiced by counsel's performance. A defendant has the initial burden of proving that the identification procedure was impermissibly suggestive. It is only after a defendant meets this burden that the

20

burden then shifts to the prosecutor to prove that the identification was reliable independent of the suggestive procedure. *See English v. Cody,* 241 F.3d 1279, 1282-83 (10th Cir. 2001) (citing *United States v. Wade,* 388 U.S. 218, 240, n. 31 (1967)). If a defendant fails to show that the identification procedures are impermissibly suggestive, or if the totality of the circumstances indicate that the identification is otherwise reliable, no due process violation has occurred. As long as there is not a substantial misidentification, it is for the jury or factfinder to determine the ultimate weight to be given to the identification. *See United States v. Hill,* 967 F.2d 226, 230 (6th Cir. 1992).

Petitioner contends that Adaline Ramsey's in-court identifications was tainted because she identified him prior to trial after being shown his photograph by police. Trial counsel's failure to seek suppression of an allegedly unreliable in-court identification is not ineffective, absent a reasonable probability that the motion would have resulted in a decision to exclude the testimony. *See White v. Helling,* 194 F.3d 937, 941-42 (8th Cir. 1999). In this case, Adaline Ramsey testified that she personally knew Petitioner such that her identification was based upon her personal knowledge, not the photograph. Further, she identified Petitioner as the shooter at trial and indicated that her identification was based upon her recollection of the shooting. Moreover, the record reveals that defense counsel cross-examined Adaline Ramsey and other witnesses about their respective abilities to identify the perpetrators. The decision to attack the credibility of Ramsey's identification of Petitioner through cross-examination, rather than to object to the in-court identification, was a reasonable trial strategy which defeats Petitioner's ineffective assistance of counsel claim. *See Killebrew v. Endicott,* 992 F.2d 660, 665 (7th Cir. 1993).

Accordingly, for the reasons stated, Petitioner has failed to show that counsel's performance was deficient and/or that he was prejudiced by counsel's performance under the standard set forth

21

in *Strickland*. He is thus not entitled to habeas relief on this claim.

      F.      Procedural Default of Remaining Claims

      Petitioner also claims that he is entitled to habeas relief because the prosecution violated a discovery order and committed a *Brady* violation, because his pre-trial statement to police was involuntary, and because the pre-trial identification procedure was unduly suggestive. Respondent asserts that these claims are barred by procedural default and do not otherwise warrant habeas relief.

      Petitioner first presented these claims to the state courts in his motion for relief from judgment. Although the trial court and the Michigan Court of Appeals appear to have denied the claims on the merits, the Michigan Supreme Court denied leave to appeal for failing "to meet the burden of establishing entitlement to relief under MCR 6.508(D)." Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). A petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. *Wainwright*, 433 U.S. at 85; *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001). In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state

judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Here, the Michigan Supreme Court relied upon Michigan Court Rule 6.508(D) in denying Petitioner leave to appeal. That rule provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* Mich. Ct. R. 6.508(D). The state court's decision, while brief, was based upon an independent and adequate state procedural rule. *See Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000). Although the Michigan Supreme Court did not fully explain its decision, the record indicates that Petitioner failed to raise these claims on direct appeal of his convictions despite the opportunity to do so.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. Petitioner, however, has not shown that appellate counsel was ineffective under the standard set forth in *Strickland, supra,* 466 U.S. at 687-94; *see also Lockhart*, 506 U.S. at 369-70; *McQueen*, 99 F.3d at 1311-12. It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones*

23

*v. Barnes*, 463 U.S. 745, 754 (1983).  The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard.

Id. at 754.  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  Petitioner has failed to show that by omitting the claims presented in his subsequent motion for relief from judgment appellate counsel's performance fell outside the wide range of professionally competent assistance.  Appellate counsel presented eight claims on direct appeal, including claims challenging the submission of the first-degree murder charge, the sufficiency of the evidence, potential jury bias and the trial court's ex parte communication with the jury, the effectiveness of trial counsel, the admission of hearsay evidence, the prosecutor's conduct, and the sentencing decision.  Petitioner has not shown that appellate counsel's strategy in presenting such claims and not raising other claims was deficient or unreasonable.  Petitioner has failed to establish that he was denied the effective assistance of appellate counsel.

This Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).  Further, Petitioner has not established that a fundamental miscarriage of justice has occurred.  The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent.  *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 624 (1998).  "To be credible, [a

claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. Petitioner's remaining habeas claims are thus barred by procedural default and do not warrant relief from this Court.

**V.**     **Conclusion**

For the reasons stated, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented.  Accordingly;

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

**BERNARD A. FRIEDMAN**
**UNITED STATES DISTRICT JUDGE**

24 SEP 2002

**DATED: _____**

25